SCOTT ERIK ASPHAUG
United States Attorney
District of Oregon
**PETER D. SAX, NYSB #4506721**
Assistant United States Attorney
Peter.Sax@usdoj.gov
**GARY Y. SUSSMAN, OSB 873568**
Assistant United States Attorney
gary.sussman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:18-cr-475-MO |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS |
| DONTAE LAMONT HUNT, | |
| Defendant. | |

Defendant Donte Hunt dropped and abandoned a black iPhone in a parking lot where he was shot. Eugene Police officers picked up the phone from the scene and logged it as evidence in the shooting investigation along with a white iPhone that they took from defendant at the hospital. Months later, defendant became the target of a federal drug trafficking investigation. As part of that investigation, federal agents secured a search warrant for defendant's phones and retrieved them from Eugene Police custody. Officers lawfully searched the black iPhone

**Government's Response to Defendant's Motion to Suppress**                                            Page 1

pursuant to the warrant and found evidence of defendant's drug trafficking activities; they could not search the white iPhone because of the device's encryption. Because defendant lacks a reasonable expectation of privacy in the phone he abandoned and because the other phone was never successfully searched, defendant's suppression motion should be denied.

I.   FACTS

Defendant was shot in the parking lot of a Eugene apartment building on December 2, 2017. He and Rylie Jones pulled into the parking lot in a Lexus sedan. He got out of the car and walked toward the building with a cellphone to his ear and a bag slung across his shoulder. A gunman appeared from behind the building and fired repeatedly at defendant, then fled. Defendant staggered and Jones ran to his side. Jones took Defendant's bag and put it in the Lexus's trunk.

Minutes later, Aiesha Thomas pulled up in a Honda Civic. Jones retrieved defendant's bag from the Lexus and put it in the Civic. The two women drove defendant to the hospital, dropped him off, then drove away. Police stopped them for a traffic violation and found two loaded guns in defendant's bag.

At the hospital, Eugene Police officers interviewed defendant. He refused to cooperate. The officers seized his white iPhone and logged it in their secure evidence facility as part of their investigation into the shooting.

That night, Eugene Police officers also searched the shooting scene. They found blood, bullet fragments, 13 spent shell casings, and a black iPhone. The iPhone was laying on the ground in a bed of barkdust next to a bush. Officers saw nothing on scene that firmly established to whom the phone belonged. Officers also logged the black iPhone into their evidence facility. Eugene officers did not search either the black or the white iPhone. Defendant did not assert a

**Government's Response to Defendant's Motion to Suppress**                     **Page 2**

property claim over the black iPhone and did not seek the return of either device. (*See* Declaration of Koren D. Evans, attached as Exhibit A, at 2).

In June 2018, Portland Police identified defendant as the distributor of counterfeit oxycodone pills that contained a fentanyl analogue. Investigators from the Portland Police Bureau, the FBI, and Internal Revenue Service Criminal Investigation secured federal search warrants for three properties associated with defendant. They seized cash, drug packaging materials, numerous cellphones, three guns, and counterfeit oxycodone pills.

As the FBI's drug trafficking investigation progressed, evidence showed that defendant was involved in drug trafficking at, and before, the time of his December 2017 shooting. An FBI task force officer secured federal warrants to search the two iPhones seized by the Eugene Police during its investigation into that shooting. Magistrate Judge Jolie Russo signed the search warrant on January 9, 2020; agents took custody of the phones that same day (Declaration of Scott McCollister, attached as Exhibit B, at 2). The electronic extraction process began shortly thereafter (*id*. at 4).

The forensic examiner could not unlock the white iPhone or bypass its encryption, and accordingly, did not extract any evidence from it. Agents did search the black iPhone. The phone was subscribed in defendant's name and contained evidence of drug trafficking, including pictures of blue, crumbly pills that are identifiable as counterfeit oxycodone pills. The government intends to use this evidence in its case-in-chief to support the drug trafficking charges against defendant.

**Government's Response to Defendant's Motion to Suppress**                                             **Page 3**

## II. DISCUSSION

The government has no evidence from defendant's white iPhone, so there is nothing to suppress. His motion on that phone must be denied because no remedy can be had.

The evidence from defendant's black iPhone, which he abandoned at the shooting scene and never reclaimed, was lawfully searched under a federal warrant. That evidence was seized in compliance with the Fourth Amendment and should remain available as proof of defendant's drug crimes.

### A. Hunt abandoned the black iPhone and does not have standing to suppress its contents.

A defendant has no standing to complain about the search or seizure of property that he voluntarily abandoned. *Abel v. United States*, 362 U.S. 217, 240-41 (1960). "Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other objective facts." *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976). The question is "whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search." *Id*.

The government has the burden of establishing abandonment by a preponderance of the evidence. *United States v. Fernandez*, 772 F.2d 495, 499 (9th Cir. 1985). The Court views the facts from the vantage of a "reasonable person in the searching officer's position." *United States v. Basinski*, 226 F.3d 829, 836-37 (7th Cir. 2000).

Defendant abandoned the black iPhone. After he was shot, he kept hold of his white iPhone and took it with him to the hospital. Jones put defendant's satchel containing the two guns in the trunk of the Lexus, then retrieved it and took it with her when she and Thomas drove defendant to the hospital. Jones kept the satchel in the car after dropping defendant off at the

hospital.  But nobody bothered to retrieve the black iPhone.  They left it on the ground at the scene, as pictured below:



In doing so, defendant abandoned it.  *See United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986) (abandonment can be achieved either through "denial of ownership [or] physical relinquishment of the property").

Even if it is unclear whether defendant and Jones left the black phone behind on purpose, and not by oversight, defendant certainly relinquished any reasonable expectation of privacy by the time federal agents searched the phone in 2020.  Defendant knew that the Eugene Police investigated the shooting; they visited him at the hospital.  He knew that they had secured evidence; they seized his white iPhone directly from him and his guns from Thomas and Jones.  But in the 753 days that defendant counts between the December 2, 2017, seizure and the January 9, 2020, search warrant, neither he nor anyone else acting on his behalf claimed the black iPhone or sought its return (Exhibit A at 2).[1]

---

[1] The duration is actually 768 days.  *See* https://www.timeanddate.com/date/duration.html.

**Government's Response to Defendant's Motion to Suppress**                                              **Page 5**

He cannot now stand on a privacy interest he long since abandoned. Because defendant lacks a reasonable expectation of privacy in a phone he abandoned, his motion to suppress fails.

### B. Federal investigators searched the black iPhone without unreasonable delay.

Defendant ignores his abandonment of the phone and concentrates instead on the time between seizure and search of the device. Even if defendant retained some actionable privacy interest in the black iPhone, his delay argument fails on the merits.

The Fourth Amendment protects against unreasonable delay between the seizure of property and its subsequent search. *See United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) (the "touchstone" of assessing a search delay is reasonableness). Courts look at delay claims under a totality-of-the-circumstances, balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion." *Id.* at 633 (quote omitted). Relevant factors include the government's legitimate interest in holding the property, the length of time, the degree of interference with the defendant's possessory interest, police diligence in investigating, and the complexity and features of the investigation, including competing demands from related and unrelated cases. *See, e.g. United States v. Laist*, 702 F.3d 608, 613-14 (11th Cir. 2012) (listing factors), *see also United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002).

Here, defendant focuses on the length of delay, arguing that the government held his phone for two years before searching it. He is wrong.

Defendant treats the Eugene Police Department and the agents who searched his phone as a single, conflated "government" entity. They are not. There were two independent investigations at play here. The Eugene Police Department investigated defendant's shooting on

December 2, 2017. In that investigation, defendant was the victim. When Eugene Police searched the scene, they found a black iPhone among the debris of the crime—along with spent shell casings, bullet fragments, and defendant's blood stains. There were no outward indicators of who the phone belonged to. Surveillance footage showed both defendant and Rylie Jones trod through the area where the phone was found. That same footage showed defendant holding what looked like a phone to his ear before being shot, but its color and detail were not clear, and officers seized the white iPhone from defendant's belongings at the hospital. Eugene Police logged both the white and black iPhones into evidence, but did not search either phone's contents as part of the shooting investigation.

On June 26, 2018, almost seven months after defendant was shot in Eugene, a man died in Portland after consuming a counterfeit oxycodone pill. Portland Police, including an FBI task force officer, began investigating the dead man's source of supply and followed the trail to defendant. Portland Police collaborated with FBI, DEA, and IRS Criminal Investigation in this federal drug trafficking investigation, in which defendant was the target. Eugene Police did not participate in that federal investigation, nor did the federal investigators participate in the Eugene Police shooting investigation (Exhibit B at 1-2).

The federal investigators executed search warrants on September 27, 2018, on three residences linked to defendant. Those searches uncovered drugs, guns, cash, and numerous cellular phones. Under defendant's bed, investigators found a black gun box marked with the make, model, and serial number of the one of the guns that Eugene Police found in the car with Jones and Thomas after the two women dropped defendant off at the hospital. They also found a

hand-written receipt showing that the gun was sold by a straw buyer to Rylie Jones a week before defendant's shooting.[2]

On October 12, 2018, agents secured search warrants for the phones recovered from defendant's premises. On one, agents found text messages between defendant and the registered owner of the car that defendant was driving the night he was shot, discussing straw purchases of other guns. On December 13, 2019, agents got authorization to search another of defendant's phones and found text messages discussing drug trafficking dating back to January 2018.

Based on this evidence, federal investigators had probable cause to believe that defendant was engaged in illegal drug and gun activity in December 2017, and that the phones he was using at that time would contain evidence of those crimes. Magistrate Judge Russo issued the January 2020 search warrant for defendant's black iPhone on that basis.

Federal agents took custody of the phone from Eugene Police the same day that the federal warrant was signed and submitted it for forensic analysis on January 22, 2020, once a forensic examiner became available (Exhibit B at 2, and n.2). The examiner began data extractions shortly thereafter (*id.*). The short delay between the execution of the federal warrant on January 9 and submitting the phones for analysis on January 22 was not unreasonable. *See, e.g.*, *United States v. Jobe*, 933 F.3d 1074, 1079 (9th Cir. 2019) (acknowledging a federal holiday in assessing a warrant application timeline).

Once the federal investigation is delineated by its true contours, defendant's claimed "delay" shrinks from 753 days to none. Agents executed the warrant on January 9, 2020, the very day it issued. The warrant allowed the government 120 days to perform an initial forensic

---

[2] The authenticity of this receipt is highly suspect, as Jones' first name is misspelled, and the receipt was found in defendant's possession, not Jones' possession.

**Government's Response to Defendant's Motion to Suppress**                    **Page 8**

analysis, and 180 days to complete the analysis. The extraction began and ended well within those parameters, leaving no basis for a Fourth Amendment complaint.

The quick turnaround between the federal seizure of the phone and its search is made all the more reasonable by the other circumstances of this case. Chiefly, as the abandonment argument highlights, defendant's possessory interest in this device was diminished by his own neglect. *Sullivan*, 797 F.3d at 633-34 (a defendant's failure to seek return of his property is a factor that weighs against suppression). This is the first time that defendant has made an affirmative claim to the black iPhone. In two years, he never identified himself as the owner of this device or sought its return from the Eugene Police (Exhibit A at 2). He reclaims it only now, on the eve of trial, in an attempt to suppress its incriminating contents. A defendant who does "not even allege, much less prove, that the delay in the search of [his property] adversely affected legitimate interests protected by the Fourth Amendment" and "never sought return of the property" cannot make a sufficient showing of unreasonable delay. *Sullivan*, 797 F.3d 633-34 (quoting *United States v. Johns*, 469 U.S. 478, 487 (1985)). Mere ownership, without any attempt to use this piece of property, does not afford defendant much weight in the Fourth Amendment balancing.

The Fourth Amendment insists on diligence—both from the government and from defendants seeking to suppress evidence of their crimes. *See United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (when police "neglect to seek a warrant without any good explanation for that delay . . . the intrusion on an individual's possessory interest is less likely to be justifiable"); *see also Sullivan*, 797 F.3d at 633-34 (considering defendant's attempts, or lack thereof, to seek return of seized property). The government investigated diligently. Defendant,

**Government's Response to Defendant's Motion to Suppress**                                            **Page 9**

on the other hand, sat back until his trial neared and now asserts a possessory interest that he has long neglected. His suppression motion should be denied on that basis as well.

### C. Investigators acted in good faith; suppression is not warranted.

Not every violation of the Fourth Amendment triggers the exclusionary rule. *Herring v. United States*, 555 U.S. 135, 140-41 (2009). Indeed, the Supreme Court views suppression as "our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). The exclusionary rule "is not an individual right and applies only where it result[s] in appreciable deterrence." *Herring*, 555 U.S. at 141 (internal quotation marks and citations omitted). *See also Davis v. United States*, 564 U.S. 229, 236 (2011) ("Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search") (internal quotation marks and citations omitted).

The exclusionary rule's "sole purpose" is "to deter future Fourth Amendment violations." *Id.* at 236-37. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring,* 555 U.S. at 144. The rule "serves to deter deliberate, reckless, or grossly negligent conduct" or "recurring or systemic negligence." *Id.* No such conduct occurred here.

The federal investigators worked with the diligence that the Fourth Amendment demands. They followed evidentiary leads from an overdose death to the decedent's supplier-turned-confidential-informant to defendant. They executed warrants on defendant's properties and cellphones, tracing the line of his drug and gun activities back in time to December 2017. After doing so, the federal investigators secured warrants to search the phones seized by the Eugene Police following the shooting, seized the phones promptly once the warrants issued, and

searched them (or attempted to do so) in compliance with the terms of the warrants. This case was built on solid police work, with no hint of the kind of misconduct that the exclusionary rule seeks to prevent. Since there is no police misconduct to deter, suppression is not warranted. *See Jobe*, 933 F.3d 1078 (in unreasonable delay cases, deterrent value is "a necessary condition for exclusion" but "not a sufficient one," and courts must also "account for the substantial social costs generated by the [exclusionary] rule") (internal quotation marks and citation omitted); *id.* at 1079-80 (reversing the district court's order suppressing evidence after reviewing the actions the police took and contrasting cases in which suppression was warranted).

### III.   CONCLUSION

Defendant has no legitimate expectation of privacy in a phone he abandoned and made no effort to either claim or retrieve for years. Even if he had an expectation of privacy, the phone was searched pursuant to a valid federal search warrant. Defendant's motion to suppress should be denied.

DATED: March 23, 2022.                                Respectfully submitted,

SCOTT ERIK ASPHAUG
United States Attorney

*/s/ Peter D. Sax*
PETER D. SAX, NYSB 4506721

*/s/ Gary Y. Sussman*
GARY Y. SUSSMAN, OSB 873568
Assistant United States Attorneys