IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:18-cr-00475-IM |
| v. | **OPINION AND ORDER** |
| **DONTAE LAMONT HUNT**, | |
| Defendant. | |

Scott Erik Asphaug, Acting United States Attorney, Peter D. Sax, Amy E. Potter, and Gary Y. Sussman, Suzanne A. Miles, Assistant United States Attorneys, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204. Attorneys for the United States.

John Robb, Kevin Sali LLC, 1500 SW First Avenue, Suite 1020, Portland, OR; Amanda Alvarez Thibeault, Alvarez Thibeault, LLC, 330 NE Lincoln Street, Suite 100, Hillsboro, OR 97124. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Defendant Dontae Lamont Hunt is charged in a superseding indictment with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), 841(b)(1)(C), and 846, conspiracy to possess with intent to distribute, and to distribute controlled substances; 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi), possession with intent to distribute Fentanyl analogue; 18 U.S.C. §§ 922(g)(1) and 924(e)(1), unlawful possession of firearms as an armed career criminal; 18 U.S.C. § 924(c)(1)(A), possession of firearm in furtherance of a drug trafficking crime; and 18 U.S.C.

§ 1956, laundering of monetary instruments. ECF 45; ECF 47; *see also* ECF 73. The indictment also includes several forfeiture allegations. ECF 45.

Defendant now moves to suppress evidence resulting from the search of two of Defendant's cell phones, a black iPhone and a white iPhone, which were seized on December 2, 2017. ECF 176 at 1. He contends that these cell phones were unlawfully seized and retained without a warrant. *Id*. This Court held a hearing on Defendant's motions on April 13, 2022. ECF 197. After considering all of the pleadings, the record, and the arguments of counsel, this Court denies Defendant's Motion to Suppress.

## BACKGROUND

On December 2, 2017, Defendant and Rylie Jones drove a Lexus sedan into the parking lot of an apartment building in Eugene, Oregon. ECF 182 at 2. Defendant got out of the Lexus sedan and walked toward the building, apparently holding a cellphone to his ear and a bag across his shoulder. *Id*. Prior to reaching the building, Defendant was shot; the shooter fled the scene. *Id*. Jones then took Defendant's bag and put it in the trunk of the Lexus. *Id*. Shortly thereafter, Aiesha Thomas arrived on scene in a Honda Civic; Jones retrieved the bag from the Lexus and put it in the Honda. *Id*. Thomas and Jones then dropped Defendant off at a hospital and drove away. *Id*. Eugene Police subsequently conducted a traffic stop of Thomas and Jones and found in the Honda two loaded guns in the bag. *Id*.

Eugene Police tried to interview Defendant at the hospital, but he refused to cooperate. *Id*. At the hospital, police officers seized a white iPhone from Defendant's pants pocket without a warrant or Defendant's consent and logged it into evidence. *Id*.; ECF 176 at 2. Eugene Police also searched the scene of the shooting and found blood, bullet fragments, spent shell casing, as well as a black iPhone on the ground near a bush, as well as two sets of keys. ECF 182 at 2; ECF 187-2, Ex. 2, at 1 (Eugene Police Department Scientific Examination Report). Eugene Police

PAGE 2 – OPINION AND ORDER

officers seized the black iPhone and logged it into evidence, *id.*, as part of an investigation into the shooting, in which Defendant was identified by law enforcement as a victim. ECF 176 at 2; ECF 187-1, Ex. 1, at 1 (investigating "assault").

Over six months later, a federal drug investigation began, following the June 26, 2018 death of an individual who had consumed a counterfeit oxycodone pill. ECF 182 at 7. That investigation was conducted by the Portland Police Bureau, the Federal Bureau of Investigation ("FBI"), the Internal Revenue Service Criminal Investigation Division ("IRS-CI"), and the Drug Enforcement Agency ("DEA"). *Id.*; ECF 182-2, McCollister Decl., at ¶ 3. Eugene Police officers were not involved in this federal drug investigation. ECF 182-2, McCollister Decl., at ¶ 3. Through the investigation, Defendant was eventually identified as a supplier of counterfeit oxycodone pills. ECF 182 at 3. As that drug investigation proceeded, law enforcement officers learned that the Eugene Police possessed phones from the night Defendant was shot and that these phones had not been searched. ECF 182-2, McCollister Decl., at ¶ 4. They also developed evidence through searches that occurred between approximately September 27, 2018 and December 13, 2019, that gave law enforcement probable cause to believe that Defendant was engaged in drug trafficking in December 2017, and that those phones were likely to contain evidence of drug trafficking. *Id.*; ECF 182 at 8; ECF 52, Ex. 21, at ¶¶ 22–23.

On January 9, 2020, officers in the federal drug investigation applied for and obtained federal search warrants for the iPhones. ECF 182-2, McCollister Decl., at ¶ 4. The warrants were executed the following day and the officers seized custody of the phones from the Eugene Police Department. *Id.*; *see also* ECF 176 at 2. The black iPhone was submitted for forensic analysis on January 22, 2020, apparently when a forensic analyst became available. ECF 182-2, McCollister Decl., at ¶ 5 & n.1; *see also* ECF 182 at 8–9 (noting the warrant allowed 120 days to perform an

initial forensic analysis and 180 days to complete the analysis). The search of the black iPhone revealed that it was subscribed in Defendant's name, and contained purported evidence of drug trafficking, which the Government intends to use in its case-in-chief at trial in this case. ECF 182 at 3. The forensic analyst was unable unlock the white iPhone or access any data contained on it. ECF 182-2, McCollister Decl., at ¶ 6.

Between the time the Eugene Police seized the iPhones and when federal task force officers obtained search warrants for them, neither Defendant nor anyone acting on his behalf contacted the Eugene Police Department to claim ownership of or seek the return of either the black or white iPhone. ECF 182-1, Evans Decl., at ¶ 4. According to the property receipt prepared by the Eugene Police Department, one set of keys seized from the scene of the shooting was provided to an acquaintance of the Defendant. ECF 187-1, Ex. 1, at 1.

Defendant objects to the search and seizure of these iPhones and seeks to suppress all evidence from them. ECF 176 at 1.

## STANDARDS

The Fourth Amendment protects against unreasonable searches and seizures by the government. U.S. Const. amend. IV; *Elkins v. United States*, 364 U.S. 206, 213 (1960) (applying Fourth Amendment to searches and seizures by state law enforcement offices through the Fourteenth Amendment). Searches conducted without a warrant are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted); *see also Riley v. California*, 573 U.S. 373, 382 (2014) ("In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."). "The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government." *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012). The ordinary remedy for

PAGE 4 – OPINION AND ORDER

an unreasonable search is the exclusionary rule, which prohibits "evidence seized during an unlawful search" from use at trial. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

## DISCUSSION

Cell phones, along with other electronic devices, are subject to protection under the Fourth Amendment. *See United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013) (en banc). Guided by Fourth Amendment principles, this Court first considers the propriety of the Government's conduct with respect to the white iPhone and then turns to the black iPhone.

### A. White iPhone

The Government contends that because no evidence was obtained from the white iPhone, there is nothing to suppress, and the motion should be denied as to this phone. ECF 182 at 4. At the hearing on this motion, the parties agreed that the Court should deny this motion as moot, but that Defendant may renew his motion should law enforcement succeed in searching the white iPhone in the future. This Court agrees, and the motion as to the white iPhone is denied as moot, with leave to renew.

### B. Black iPhone

This Court now turns to the search and seizure of the black iPhone, which Defendant contends was unlawful, without a warrant, and without his consent, as well as unreasonably delayed for 768 days. ECF 176 at 2–3; *see also* ECF 182 at 5 n.1 (noting the duration is 768 days, not 753 days as Defendant initially asserted). The Government in turn argues that Defendant lacks standing to suppress the contents of the black iPhone because he voluntarily abandoned it. ECF 182 at 4. The Government also asserts that it was searched without unreasonable delay. *Id*. at 6.

### 1. Black iPhone Was Abandoned

"If a person has voluntarily abandoned property, he has no standing to complain of its search or seizure." *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976) (citing *Abel v. United States*, 362 U.S. 217, 240–41 (1960)). This is because "[o]nly a person whose privacy is invaded by a search has standing to object to it under the exclusionary rule." *Id*. Whether property is abandoned is a factual question; it is "primarily a question of intent, and intent may be inferred from words, acts, or other objective facts." *Id*. (noting it is "not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search"); *see also United States v. Burnette*, 698 F.2d 1038, 1047 (9th Cir. 1983) ("Whether a person intends to retain a privacy interest in the property is determined by objective standards."). Whether property has been abandoned depends on "the totality of circumstances, and two important factors are denial of ownership and physical relinquishment of the property." *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986). Nevertheless, "[a]n abandonment must be voluntary, and an abandonment that results from [a] Fourth Amendment violation cannot be voluntary." *United States v. Stephens*, 206 F.3d 914, 917 (9th Cir. 2000) (internal quotation marks and citation omitted). The Government bears the burden of establishing abandonment. *United States v. Fernandez*, 772 F.2d 495, 499 (9th Cir. 1985).

This Court finds that considering the totality of the circumstances, at the time the Eugene Police seized the black iPhone, Defendant's actions were objectively inconsistent with a continued expectation of privacy in the phone. The facts demonstrate that officers found the black iPhone on the ground at the scene of the shooting. *See* ECF 182 at 5. It was not clear to the officers to whom the cell phone belonged. *Id*. at 2; *see Nordling*, 804 F.2d at 1469; *see also United States v. Mamani-Vidal*, No. 3:15-CR-00044-8-JO, 2017 WL 627430, at *3 (D. Or. Feb.

PAGE 6 – OPINION AND ORDER

15, 2017) (finding the defendant's actions—leaving a bag unattended without identification on a public street—sufficient to find abandonment).[1] Defendant contends that the phone "fell from his hands as he was fleeing the scene of the shooting," and therefore he cannot be said to have intentionally abandoned it. ECF 187 at 4. This Court acknowledges that Defendant may have dropped the phone in the course of being shot or fleeing. *See* ECF 52, Ex. 21, at ¶ 23. Defendant's conduct after the shooting, however, viewed objectively, suggests the abandonment was not involuntary. After Defendant was shot, Jones took the bag Defendant was holding when he was shot and put it into the trunk of the Lexus; once Thomas arrived, she transferred the bag to the Honda, and only after that did Thomas and Jones take Defendant to the hospital. ECF 182 at 2. Despite the apparent care taken to secure the bag, no one at the scene, Defendant, Jones, or Thomas, made any apparent effort to secure the black iPhone. *See United States v. Kelly*, No. 4:20-CR-00191-DCN, 2021 WL 2109189, at *4 (D. Idaho May 25, 2021) (noting the defendant abandoned a backpack when he could have "taken it with him . . . but chose not to"); *United States v. Woodson*, No. CR 11-00531 WHA, 2011 WL 5884913, at *8 (N.D. Cal. Nov. 23, 2011) ("Physical relinquishment of control . . . is sufficient to extinguish any reasonable expectation of privacy.").

Defendant also contends that he was never informed of the seizure of the black iPhone by the Eugene Police. ECF 187 at 3. The evidence is clear, however, that Defendant was on notice that the Eugene Police Department was investigating the shooting and seized evidence related to it from the crime scene. A Eugene Police officer spoke to Defendant at the hospital, sought to

---

[1] Although surveillance video footage of the shooting shows Defendant holding a phone to his ear, officers were unable to discern the color of the phone, so it was reasonable for them to conclude that the phone in the video was the white iPhone, the one found in Defendant's possession at the hospital. *See* ECF 182 at 7.

PAGE 7 – OPINION AND ORDER

interview Defendant about the shooting, and seized Defendant's white iPhone. *See* Def. Ex. 4. There is also evidence that a Eugene Police officer provided one set of the keys found at the shooting scene to an acquaintance of Defendant, which again suggests that Defendant was on notice that the Eugene Police Department was in possession of items found at the scene of the shooting. ECF 187-1, Ex. 1, at 1. There is no evidence that Defendant did or said anything in the ensuing months or years to assert or maintain an interest in the black iPhone. *See* ECF 182-1, Ex. A, at ¶ 3. In sum, the objective facts available to the Eugene Police at the time of the seizure—an unidentified cell phone on the ground near a parking lot adjacent to evidence of a shooting—suggest that the black iPhone was voluntarily abandoned. *See United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000) (explaining the court "look[s] solely to the external manifestations of his intent as judged by a reasonable person possessing the same knowledge available to the government agents."); *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997) ("Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers."). Therefore, Defendant has no standing to object to the seizure and search of the black iPhone because Defendant lacked a reasonable expectation of privacy in the black iPhone—evinced through his abandonment of it. Accordingly, his motion to suppress fails.

**2. No Unreasonable Delay Prior to Obtaining Search Warrant**

Even assuming Defendant retained some reasonable expectation of privacy in the black iPhone following its seizure, the delay between the initial seizure and subsequent search warrant does not warrant suppression.

A seizure that is "lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (citing *United States v. Place*, 462 U.S. 696, 707–10 (1983)). "An unreasonable delay between the seizure of a package and obtaining a search

PAGE 8 – OPINION AND ORDER

warrant may violate the defendant's Fourth Amendment rights." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). Courts "determine whether the delay was 'reasonable' under the totality of the circumstances, not whether the Government pursued the least intrusive course of action." *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002). There is no bright line test to determine when a delay becomes unreasonable, and courts must balance the government's interest in the seizure against the defendant's possessory interest in the property seized. *Sullivan*, 797 F.3d at 633. Courts consider factors such as whether the defendant consented, the extent of the intrusion into the defendant's possessory interest, the Government's legitimate interest in holding the property as evidence, and the length of delay. *Id.* Additional considerations include "whether the police diligently pursue[d] their investigation," *United States v. Laist*, 702 F.3d 608, 614 (11th Cir. 2012) (internal quotation marks and citation omitted), and the defendant's incarceration, parole, or probation status, *Sullivan*, 797 F.3d at 633.

Although it appears that Defendant would not have consented to the search and seizure of the black iPhone, Defendant's weak possessory interest in the phone weighs against his argument for unreasonable delay.[2] Courts have recognized that defendants can have strong possessory and privacy interests in their cell phones. *See Riley*, 573 U.S. at 393–96. But Defendant never once—until the instant suppression motion—sought to assert a possessory interest in the black iPhone. *See* ECF 182 at 9; ECF 182-1, Ex. A, at ¶ 3. Whether a defendant ever sought return of the seized property and the significance of the interference with the defendant's possessory interest are factors this Court should consider, and here, they weigh against a finding that any delay was unreasonable. *See Sullivan*, 797 F.3d at 633–34 ("[A]n individual who did not even allege[ ],

---

[2] This Court notes that this factor does not neatly track the facts of this case where the iPhone was seized from another law enforcement agency, not directly from Defendant.

PAGE 9 – OPINION AND ORDER

much less prove[ ], that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment and never sought return of the property has not made a sufficient showing that the delay was unreasonable." (internal quotation marks and citation omitted)).

This Court further recognizes the Government's interest in the black iPhone is legitimate. The Government certainly has a real and substantial interest in investigating drug trafficking, including seizing and searching cellphones and other modes of communication belonging to alleged drug traffickers.

Finally, this Court considers the length of delay. "[E]ven if a defendant has a diminished possessory interest in the seized item, the Fourth Amendment still obligate[s] the United States to diligently obtain[ ] a warrant." *United States v. Uu*, 293 F. Supp. 3d 1209, 1213–14 (D. Haw. 2017) (internal quotation marks omitted) (quoting *Laist*, 702 F.3d at 616). The Eugene Police seized the black iPhone on December 2, 2017, and held it without searching it until January 9, 2020, when federal law enforcement officers seized the black iPhone pursuant to a search warrant in a federal drug investigation. ECF 182 at 7–8. Defendant contends the 768-day delay was unreasonable. *See* ECF 176 at 3. However, this Court finds that under the circumstances of this case, the delay is not fairly depicted as 768 days and that any delay was not unreasonable.

During the initial period when the phone was held by the Eugene Police as evidence of a shooting, the record reflects there was not probable cause to search the phone for evidence of drug trafficking at that time. The Eugene Police were not investigating drug-related offenses, rather they were investigating a shooting where Defendant was the victim when they seized the phone. *See* ECF 182-2, Ex. B, at ¶ 3; ECF 187-2, Ex. 2; ECF 187-3, Ex. 3. And crucially, there was no identified owner of the phone: between December 2, 2017 and January 9, 2020, neither

PAGE 10 – OPINION AND ORDER

Defendant nor anyone acting on his behalf contacted the Eugene Police Department to claim ownership of or seek the return of either the black or white iPhone. ECF 182-1, Evans Decl., at ¶ 4. On these facts, considering the totality of the circumstances—in particular that no one made a claim on the black iPhone during this time—this Court cannot say the conduct was unreasonable.[3]

A second period of delay arguably began when the Government developed probable cause to believe the black iPhone contained evidence of Defendant's drug trafficking activities, and January 9, 2020, when the Government sought a search warrant for the phone. A search of one of Defendant's other phones—pursuant to a December 13, 2019 warrant—revealed text messages indicating likely drug trafficking activity during December 2017—the same time as when Defendant was shot in Eugene. ECF 182 at 7. This evidence, coupled with evidence connecting the firearms found following the Eugene shooting, gave law enforcement probable cause to believe that the black iPhone likely contained evidence of drug trafficking. ECF 182-2, McCollister Decl., at ¶ 4. The Government then diligently and promptly sought to secure a search warrant for the black iPhone, applying for and securing a warrant on January 9, 2020. ECF 182-2, McCollister Decl., at ¶ 4. Given the totality of the circumstances here, including

---

[3] Even assuming this initial delay was unreasonable, this Court finds no reason to suppress because there is no "'nexus' in time, place, or purpose" between the Eugene Police's investigation and this federal prosecution which would warrant exclusion in this proceeding. *United States v. Medina*, 181 F.3d 1078, 1082 (9th Cir. 1999) ("Absent any threshold showing of a connection or 'nexus' in time, place, or purpose between the searches and the subsequent prosecution, there is no appreciable deterrent purpose in suppressing the evidence."); *see also United States v. Janis*, 428 U.S. 433, 454 (1976) ("[W]e conclude that exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion."); *United States v. Basinger*, 60 F.3d 1400, 1407 (9th Cir. 1995); *United States v. Jobe*, 933 F.3d 1074, 1078 (9th Cir. 2019).

PAGE 11 – OPINION AND ORDER

Defendant's failure to assert any possessory interest in the phone, this Court finds this period of delay is not unreasonable. Therefore, suppression of the evidence is unwarranted.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress, ECF 176, is DENIED.

**IT IS SO ORDERED**.

DATED this 19th day of April, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge