IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:18-cr-00475-IM |
| v. | **OPINION AND ORDER RE: MOTIONS TO DISMISS BASED ON SPEEDY TRIAL and DISCOVERY VIOLATIONS, and MOTION TO COMPEL IDENTITY OF CONFIDENTIAL SOURCE** |
| **DONTAE LAMONT HUNT**, | |
| Defendant. | |

Scott Erik Asphaug, Acting United States Attorney, Peter D. Sax, Amy E. Potter, Gary Y. Sussman, and Suzanne A. Miles, Assistant United States Attorneys, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204. Attorneys for the United States.

John Robb, Kevin Sali LLC, 1500 SW First Avenue, Suite 1020, Portland, OR; Amanda Alvarez Thibeault, Alvarez Thibeault, LLC, 330 NE Lincoln Street, Suite 100, Hillsboro, OR 97124. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Defendant Dontae Lamont Hunt is charged in a superseding indictment with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), 841(b)(1)(C), and 846, conspiracy to possess with intent to distribute and to distribute controlled substances; 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi), possession with intent to distribute fentanyl analogue; 18 U.S.C. §§ 922(g)(1) and 924(e)(1), unlawful possession of firearms as an armed career criminal; 18 U.S.C. § 924(c)(1)(A),

PAGE 1 – OPINION AND ORDER

possession of firearm in furtherance of a drug trafficking crime; and 18 U.S.C. § 1956, laundering of monetary instruments. ECF 45; ECF 47; *see also* ECF 73. The indictment also includes several forfeiture allegations. ECF 45.

This matter comes before this Court on Defendant's two Motions to Dismiss, ECF 194; ECF 195, and on the portion of Defendant's Motion to Compel, ECF 177, on which this Court previously reserved ruling at the parties' request. *See* ECF 198 at 1 n.1. This Court heard oral argument on the motions on May 10, 2022. First, Defendant requests that this Court dismiss the indictment against him for constitutional and statutory speedy trial violations. ECF 194 at 1. Next, Defendant seeks dismissal based on the Government's alleged failure to timely provide discovery materials to the defense pursuant to Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). ECF 195 at 1. As stated on the record and in his motion, in the alternative to dismissal, Defendant requests that this Court exclude evidence and witnesses, grant a continuance of trial but find time countable against the Government, or grant a continuance of trial and exclude time. *Id*. at 22–23. Finally, Defendant seeks to compel the identity and other information regarding the Confidential Source referenced in a search warrant application. ECF 177 at 2; s*ee* ECF 183-1, Ex. 1, ¶ 64.

For the reasons that follow and as stated on the record at the May 10, 2022 hearing, this Court DENIES Defendant's Motion to Dismiss for speedy trial violations, ECF 194; DENIES Defendant's Motion to Compel the identity of the Confidential Source, ECF 177; and DENIES Defendant's Motion to Dismiss for discovery violations, ECF 195, except that this Court GRANTS Defendant leave to renew the *Franks* motion specifically regarding the statements referenced in the Motion to Dismiss, *id*. at 7–11. Additionally, as stated on the record, Defendant

may file a motion to compel certain information regarding the Source of Supply.[1] Finally, this Court resets trial to October 18, 2022, at the request of parties, and finds time excludable.

## LEGAL STANDARDS

### A. Speedy Trial

Under the Speedy Trial Act ("STA"), a defendant must be brought to trial within 70 days of his indictment or first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). If the 70-day period—not including excludable delay—is exceeded the court must dismiss the indictment on defendant's motion. *United States v. King*, 483 F.3d 969, 972 (9th Cir. 2007); 18 U.S.C. § 3162(a)(1).

Section 3161(h) of the STA lists periods of delay that must be excluded in computing the time within which the trial must commence. For instance, a court may exclude periods of delay resulting from pretrial motions and delays to which the defendant agrees. 18 U.S.C. § 3161(h). The STA also includes an ends of justice provision, allowing for the exclusion of time where a district court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). Section 3161(h)(7)(A) requires the court to set forth in the record, "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial." *Id*.

In determining whether the ends of justice outweigh the best interest of the public and the defendant in a speedy trial, the district court must evaluate, "among others," several enumerated factors. *Id.* § 3161(h)(7)(B)(i)–(iv). Relevant to Defendant's claims regarding the continuances

---

[1] This Court refers to certain individuals by the nomenclature proposed by the Government and agreed to by Defendant in advance of the May 10, 2022 hearing on these motions. *See* ECF 213.

related to the Covid pandemic, the first enumerated factor asks "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." *Id.* § 3161(h)(7)(B)(i); *see also United States v. Olsen*, 995 F.3d 683, 692 (9th Cir. 2021) (directing courts to consider seven non-exhaustive factors when considering how the Covid pandemic affects STA claims).

The Sixth Amendment of the United States Constitution separately affords criminal defendants a right to a speedy trial. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial…"). This right attaches at arrest, is tolled after a Rule 48(a) dismissal, and reattaches when the defendant is reindicted. *See United States v. Wallace*, 848 F.2d 1464, 1469 (9th Cir. 1988). In *Barker v. Wingo*, the United States Supreme Court established a four-part test to determine whether the government has violated this right. 407 U.S. 514, 530 (1972). The four factors are: (1) the length of delay, (2) the reason for it, (3) the defendant's assertion of his speedy trial rights, and (4) prejudice to the defendant from the delay. *Id.*

**B.   Discovery**

Rule 16 "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). Upon request, the government must disclose all "documents . . . within the government's possession, custody, or control . . . material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). "A defendant must make a threshold showing of materiality." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). Though the defendant must do more than provide a "general description of the information sought" or "conclusory allegation of materiality," the defendant need only show the documents in the government's possession are "helpful to the defense." *Id.* (internal quotation marks and citations omitted); *see also United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (explaining that "[m]ateriality is a

PAGE 4 – OPINION AND ORDER

low threshold," satisfied so long as the information would help prepare a defense). "Information is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path." *Id*. at 768 (internal quotation marks and citation omitted); *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Even inculpatory evidence may be relevant."). And the requested documents need not be admissible in order to be discoverable. *United States v. Heine*, 314 F.R.D. 498, 501 (D. Or. 2016).

*Brady* and its progeny require that the Government produce all evidence favorable to the defendant and material to the defendant's guilt or punishment, including impeachment material. *Brady*, 373 U.S. at 87; *Giglio v. United States*, 405 U.S. 150, 153–55 (1972). Rule 16 is broader than *Brady*, because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *Muniz-Jaquez*, 718 F.3d at 1183.

"The government has a limited privilege to withhold the identity of confidential informants." *United States v. Sai Keung Wong*, 886 F.2d 252, 255 (9th Cir. 1989) (citing *Roviaro v. United States,* 353 U.S. 53, 59 (1957)). There is no "fixed rule" for when disclosure is justified, and the court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. In the Ninth Circuit, "[t]o obtain disclosure, a defendant must show a need for the information, and in doing so, must show more than a mere suspicion that the informant has information which will prove relevant and helpful to his defense, or that will be essential to a fair trial." *United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2000) (internal quotation marks and citations omitted); *see also United States v. Gil*, 58 F.3d 1414, 1421 (9th Cir. 1995) (noting courts should examine: "(1) the degree to which the informant was involved in the criminal activity; (2) how helpful the informant's testimony would be to the defendant; (3) the government's interest in non-

PAGE 5 – OPINION AND ORDER

disclosure"); *Sai Keung Wong*, 886 F.2d at 255–56 (citing factors of relevance to the defendant's case and the government's interest in protecting the safety of the informant).

## DISCUSSION

### C. Motion to Dismiss for Speedy Trial Violations

#### 1. Speedy Trial Act

Defendant limits his STA challenge to the delay from June 2020 to May 2021, arguing that he neither consented nor agreed to this delay. ECF 194 at 7. Defendant concedes that he consented to the delays prior to June 2020, as well as those from May 2021 to his then-current trial date of May 10, 2022. *Id*. Defendant argues that the *Olsen* factors weigh in favor of dismissal. *Id*. at 7–8. The Government responds that the motion is inappropriate because time remains on Defendant's speedy trial clock because the mistrial declared on November 17, 2020 reset the clock. ECF 199 at 1–3.[2] Defendant argues that the mistrial was not properly granted and therefore the speedy trial clock was not reset. ECF 210 at 1–2.

The Government and Defendant agree that a properly granted mistrial restarts the speedy trial clock. *See* 18 U.S.C. § 3161(e) (proving that a trial following a declaration of a mistrial must "commence within seventy days from the date the action occasioning the retrial becomes final"). If the mistrial was properly granted on November 17, 2020, the speedy trial clock has not expired, and this motion is properly denied.[3] Accordingly, this Court considers the propriety of

---

[2] The Government submitted as Exhibit 1, its calculations of the speedy trial clock from this case's inception through April 8, 2022, the date the motions to dismiss were filed. ECF 199-1, Ex. 1. On the record at the May 10, 2022 hearing, Defendant, through counsel, stated that he did not object to the Government's calculations or timeline, aside from Defendant's assertion that the mistrial did not reset the clock. Accordingly, this Court adopts the timeline and calculations set forth by the Government.

[3] Per the Government's speedy trial calculations, as of the start of Defendant's original November 2020 trial, the speedy trial clock had not yet expired. *See* ECF 199-1, Ex. 1, at 4. As explained, aside from the issue of whether mistrial reset the clock, Defendant confirmed on the

PAGE 6 – OPINION AND ORDER

the mistrial order on November 17, 2020, and concludes, for the reasons stated on the record and below, that the mistrial was properly granted.

"If a case is dismissed after jeopardy attaches but before the jury reaches a verdict, a defendant may be tried again for the same crime only in two circumstances: (1) if he consents to the dismissal; or (2) if the district court determines that the dismissal was required by 'manifest necessity.'" *United States v. Bonas*, 344 F.3d 945, 948 (9th Cir. 2003) (citation omitted). In determining whether a finding of manifest necessity was properly made, the consideration is "whether the district court's decision . . . is one that a rational jurist could have made based on the record presented to him," and "presupposes that there is, indeed, a record of the evidence the district court considered in making its decision." *Id*. When there are "communications with the jurors themselves," the Ninth Circuit has required "[a] formal record," including "what they actually said and thought." *Id*. at 949. "[A]s a general rule the unavailability of an irreplaceable juror makes a mistrial manifestly necessary." *United States v. Smith*, 621 F.2d 350, 351 (9th Cir. 1980); *see also Oelke v. United States*, 389 F.2d 668, 671 (9th Cir. 1967) (noting a "well recognized exception[ ] to the general rule" that criminal defendants have a right to trial by the jury first empaneled, is "where a juror, the court, or an accused becomes ill, incapacitated, or unavailable").

On November 3, 2020, at the start of the second day of trial, Judge Mosman notified the jurors that Juror 13 called in sick, with a fever and vomiting. ECF 136 at 208. Judge Mosman explained that he would discuss with the jurors whether they wanted to continue to serve, and if so, that they would serve as a jury of twelve. *Id*. Judge Mosman also notified the jury that an

---

record that he agrees with the calculations and timeline set forth in the Government's exhibit; therefore, this initial time period is not at issue.

attorney present in the courtroom on November 2 informed him that, while the attorney's wife was visiting their son, the son had come down with Covid, and the wife, who had since returned, was now ill, though not yet diagnosed with Covid. *Id*. During a recess, Judge Mosman gave jurors time to call their family members and consider whether they would be "willing to keep serving as a jury." *Id*. at 209. Following the recess, he asked jurors individually for their opinions in chambers and off the record. *Id*. Based on juror responses, Judge Mosman ordered a break in trial until December 1, 2020. *Id*. at 210–11. To counsel, Judge Mosman explained that two of the jurors were "very reluctant to proceed," one of whom had an autoimmune disorder, and that a third juror was set to move to Bend, Oregon. *Id*. at 213. He also explained that the Court may need to visit the issue of trial if the Covid situation worsened. *Id*.

On November 17, 2020, Judge Mosman held a status conference. ECF 123. Judge Mosman explained that Juror 13 was still ill and under doctor's orders not to appear in court. ECF 143 at 3. One additional juror had moved to Bend. *Id*. at 4. Further, Judge Mosman explained that "things have gotten worse" since November 17, 2020, and one juror "was reluctant to serve even in the time period of our original trial because he has an autoimmune disorder, putting him at significantly heightened risk, and essentially said that if the trial in December involved any worsening of the conditions in Oregon, he would request not to be asked to return for Covid reasons." *Id*. Therefore, Judge Mosman stated he could not ask that juror to return "under the circumstances now." *Id*. He noted the second juror who had a similar situation, but with a family member's health issues. *Id*. That resulted in a jury of only nine jurors, and Judge Mosman noted that if he had asked jurors if they would be willing to serve if Covid worsened, the jury "might be at zero." *Id*.

Judge Mosman then asked whether either side would be moving for a mistrial or if they would like the Court to sua sponte declare a mistrial. *Id*. at 5. The Government responded that declaring a mistrial sua sponte "seems to be the inescapable conclusion." *Id*. Judge Mosman asked whether Defendant objected, to which defense counsel stated, "no objection." *Id*. Judge Mosman declared a mistrial on the record, finding manifest necessity based on "the sickness and other loss of jurors not allowing us to continue the trial we began." *Id*. at 5; ECF 123. Trial was reset to February 2, 2021 with a backup date of May 4, 2021, and time was excluded until February 2, 2021. ECF 123.

Defendant challenges the mistrial order, primarily arguing that it runs afoul of the Ninth Circuit's directives in *Bonas*. *See* ECF 210 at 2–3. This Court disagrees with that assessment. At the outset, the Court notes that defense counsel did not object to the mistrial during the November 17, 2020 hearing, *see* ECF 143 at 5, nor did defense counsel object to Judge Mosman questioning each juror individually off the record on November 3, 2020, *see* ECF 136 at 209. Though defense counsel stated later in the hearing that he had not spoken with Defendant about the mistrial and continuance of trial, "[t]he decision whether to move for a mistrial is generally considered a strategic decision that is left to counsel." *High v. Napier*, No. CV-17-00565-TUC-DCB, 2019 WL 1959934, at *3 (D. Ariz. May 2, 2019); *see also id*. at *4–5 (collecting cases and explaining that "every circuit having considered the question had concluded that decisions regarding mistrials belong to the attorney, not the client").[4]

Additionally, the Court takes judicial notice of the fact that these events occurred prior to widespread availability of a Covid vaccine, and Oregon Governor Kate Brown's Executive

---

[4] Upon noting that Defendant had not spoken to defense counsel, counsel did not then object to the mistrial, rather counsel requested leave to file a renewed motion for release. ECF 143 at 9.

PAGE 9 – OPINION AND ORDER

Order ("EO") 20-59, issued on October 27, 2020, was in place, which extended the Covid-related state of emergency to January 2, 2021 and various capacity restrictions. *See* News Release, FDA, FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine (Dec. 11, 2020), https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19; Office of the Governor, State of Oregon, Executive Order No. 20-59: Fourth Extension of Executive Order 20-03 and Covid-19 State of Emergency (Oct. 27, 2020). Indeed, on the day the mistrial was declared, Governor Brown issued EO 20-65 which described the situation a "dangerous" and "dire," and noted a sharp increase in Covid cases from September to mid-November. *See* Office of the Governor, State of Oregon, Executive Order No. 20-65: Temporary Freeze to Address Surge in Covid-19 Cases in Oregon (Nov. 17, 2020). The situation faced by jurors and the courts in November 2020 was drastically different than the current situation, where vaccines and boosters are widely available. The context too differs from *Bonas*—where jurors faced financial hardship, which may not even be sufficient to relieve a juror of his duty to serve. *Bonas*, 344 F.3d at 950.

The record created by Judge Mosman is significantly clearer and more detailed than the one at issue in Bonas. It is clear that Judge Mosman personally spoke to the jurors and asked them whether they would be willing to continue serving on the case. *See* ECF 136 at 209. It is also clear from the record that—in addition to Juror 13 who was still unavailable due to illness—two jurors told Judge Mosman that they would be unwilling to serve if the Covid situation worsened, which it had by the time of the November 17, 2020 hearing. ECF 143 at 4.[5] Though the individual questioning of jurors by Judge Mosman took place off the record, this Court is

---

[5] The record also reflects that another juror moved out of the area, to Bend, Oregon. *Id*.

PAGE 10 – OPINION AND ORDER

satisfied that the record created on the second day of trial and during the November 17, 2020 hearing is sufficient to determine Judge Mosman properly ordered a mistrial. Accordingly, this Court finds that because time remains on Defendant's speedy trial clock, there is no violation of the STA.

**2. Sixth Amendment**

Defendant argues that the *Barker* factors weigh toward finding a Sixth Amendment violation. ECF 194 at 4. This Court disagrees and finds no constitutional violation.

Assuming the first factor, the length of delay, is presumptively unreasonable and that this factor weighs in Defendant's favor, the Court considers the remaining factors. *See United States v. Gregory*, 322 F.3d 1157, 1161–62 (9th Cir. 2003) (noting courts generally have found that "delays approaching one year are presumptively prejudicial," and proceeding to analyze the remaining factors after finding delay weighed in the defendant's favor).

As to the second factor, Defendant argues the reason for the delay—the Covid pandemic—was unjustified. ECF 194 at 4–5. Defendant notes that other courts, including state courts in Portland, Oregon held criminal jury trials during the pandemic. *Id*. This argument, however, misses the mark. Oregon state courts are subject to different speedy trial statutes which constrained the ability of judges to continue trials, even in the face of a pandemic. *See, e.g.*, O.R.S. 136.295(4) (providing that the court may, for good cause and without consent, order an extension of custody beyond 60 days, "but in no event shall the defendant be held in custody before trial for more than a total of 180 days"). Moreover, the Government is not to blame for the Covid pandemic and related public health measures, nor were the delays due to bad faith, an attempt to gain a tactical advantage, or harass Defendant. *Barker*, 407 at 531 n.32; *see also United States v. Smith*, 494 F. Supp. 3d 772, 783 (E.D. Cal. 2020) ("[T]he Court's decision to take responsible, emergency health measures to limit the spread of COVID-19 is responsible for

PAGE 11 – OPINION AND ORDER

the delay. The Court's inability to safely conduct a jury trial is a good-faith and reasonable justification for the delay. One that does not weigh against the Government."). Accordingly, this factor does not weigh in Defendant's favor.

The third factor, whether Defendant asserted his right to a speedy trial, also does not weigh in his favor. The record reflects that Defendant did not assert his speedy trial rights via motion; Defendant cites to his repeated requests for release from custody, but this is not the same as asserting his right to a speedy trial. *See* ECF 199 at 11; ECF 194 at 5.

And, finally, the fourth factor, prejudice, does not strongly weigh in Defendant's favor. Defendant cites to "extreme anxiety" in light of the Covid pandemic and the inability to attend one funeral due to his incarceration. ECF 194 at 6; *see* ECF 175. The *Barker* Court explained the right to a speedy trial functions "to minimize anxiety and concern of the accused," but also explained that the "most serious" function is "to limit the possibility that the defense will be impaired." 407 U.S. at 532. Defendant has made no argument that his defense was impaired—in fact most of the continuances in this case were granted at the request of defense counsel for purposes of preparedness. Therefore, this Court finds no Sixth Amendment violation.

**D. Motion to Dismiss for Discovery Violations**

    **1. Cooperating Defendant**

Defendant contends that the Government improperly withheld information regarding the Cooperating Defendant ("CD") until the eve of the original trial. ECF 195 at 7. CD purportedly supplied a decedent with counterfeit oxycodone pills, was arrested following the decedent's overdose, and identified Defendant as the source of the CD's supply in a search warrant application. *Id*. at 7–8; *see also* ECF 195-1, Ex. 1, at 14–15.

Defense counsel raised a *Franks* challenge to the warrants, ECF 50, which the Court denied on October 6, 2020, ECF 81. On October 19, 2020, the Government disclosed to the

PAGE 12 – OPINION AND ORDER

defense a transcript of CD's interview, which showed that CD equivocated on who supplied CD with the counterfeit pills and that CD had numerous suppliers. ECF 195 at 8–10. The Government concedes that the failure to produce the interview transcript prior to the *Franks* hearing was error, but contends it was harmless. ECF 208 at 5–8 (explaining the Government mistakenly treated the material as Jencks and overlooked that *Brady* applies to *Franks* hearings); *see United States v. Barton*, 995 F.2d 931, 934–35 (9th Cir. 1993) (explaining that *Brady* applies to *Franks* hearings). This Court does not find that the Government engaged in "flagrant misconduct" warranting dismissal. *See United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). Nonetheless, this Court urges the Government to ensure that this rule is well understood so errors such as these can be avoided in the future and finds that leave to reopen the *Franks* motion specifically regarding CD's statements referenced in the Motion to Dismiss, ECF 195 at 7–11, is warranted.

   2. **Source of Supply**

Defendant contends that the Government only recently produced substantial discovery related to the alleged source of Defendant's drug supply ("Source of Supply"), and that defense counsel requires a continuance to sufficiently review the material. ECF 195 at 12–14. Moreover, at the hearing, defense counsel represented that they intend to investigate why the Government does not intend to call the Source of Supply to testify at trial regarding a text message exchange between the Source of Supply and Defendant and whether an adverse inference is therefore warranted. *See United States v. Kojayan*, 8 F.3d 1315, 1317 (9th Cir. 1993) ("When the government can call a key percipient witness, but relies instead on out-of-court statements and on testimony by an agent who didn't understand half the critical conversation, a jury could conclude that the witness's 'testimony, if produced, would [have been] unfavorable' to the prosecution.") (citation omitted). Because this Court grants the continuance as requested by both

PAGE 13 – OPINION AND ORDER

parties and finds no *Brady* or Rule 16 violation by the Government, this Court is confident that defense counsel will have sufficient time to adequately review these materials and conduct an investigation into the Source of Supply. To the extent Defendant seeks certain material related to the Source of Supply that has not yet been produced, Defendant may file a motion to compel. If warranted, after a hearing on any motion to compel that clarifies the issues in dispute, this Court will review in camera materials submitted by the Government that relate to the Source of Supply.[6]

### 3. Civilian Witnesses 1 and 2

This Court finds no *Brady* or Rule 16 violations as to Civilian Witness 1 ("CW1") or Civilian Witness 2 ("CW2").

Defendant contends that the Government withheld evidence that CW1, a compensated government witness, was continuing to engage in criminal activity, which has been recognized as *Brady* material. ECF 195 at 19–20; *see United States v. Steinberg*, 99 F.3d 1486, 1490 (9th Cir. 1996). The Government agrees that Defendant has a *Brady* and Jencks claim to impeachment material related to CW1, but contends he does not have a right, under *Brady*, to reach the full criminal files of CW1, which are immaterial to his case. ECF 208 at 11. The Government clarifies that although it was conducting an investigation into an associate of CW1 prior to the November 2020 trial date, it did not obtain evidence of CW1's criminal activity until after the November 2020 trial had ended. *Id*. at 13–14. Discovery related to CW1, which includes impeachment material, was provided to defense counsel in March 2022. *Id*. at 21.

---

[6] In any response to such a motion to compel, the Government's submission must include a brief recitation of the factual background, legal standards, and arguments, including what material Defendant requests and why the Government thinks he is not entitled to the material.

PAGE 14 – OPINION AND ORDER

On November 19, 2020—two days after the mistrial was declared—the Government interviewed CW2, and apparently only recently provided defense counsel with a two-page memo about the interview. The memo indicates that CW2 reported that CW2 never saw Defendant with guns or drugs, which Defendant argues is plainly exculpatory and should have been disclosed earlier. ECF 195 at 18. Additionally, on March 17, 2022, the Government conducted a proffer with CW2, and has since disclosed the proffer agreement and report. ECF 195 at 17–18; ECF 208 at 9.

The Government notes that these materials have been provided prior to trial, and that any delay or limitations on reviewing the materials were for the purposes of protecting the witness, given concerns about "witness tampering," "direct threats," and "intimidation." ECF 208 at 10; 16. This Court finds that these concerns are valid, and that the materials were disclosed prior to trial, with sufficient time for review and further investigation, particularly in light of the continuance of trial date.

### 4. Bureau of Prisons

The Government has provided to defense counsel a substantial amount of discovery materials that were obtained from the Bureau of Prisons ("BOP"), including more than 5,000 pages of BOP records of Defendant's emails, calls, and finances while incarcerated. ECF 195 at 16–17. Defendant contends these records may be *Brady* and relevant to trial because they include emails between Defendant and Government witnesses, as well as a prior defense witness, and seeks a continuance to fully review and understand these emails. *Id*. The Government agrees the BOP records are relevant to defense counsel preparing for trial, but states there has been no *Brady* or Rule 16 violation as the records were produced prior to trial. ECF 208 at 18–19. This Court finds no *Brady* or discovery violation, as these materials were provided sufficiently in

PAGE 15 – OPINION AND ORDER

advance of trial, and defense counsel, because of the continuance, now has substantially more time to review them.

### E. Motion to Compel Identity of Confidential Source

Finally, this Court considers whether to grant Defendant's request to compel the identity of the Confidential Source ("CS"). *See* ECF 177 at 6–7. The Government provided information about the CS, including the CS's identity, to this Court for an in camera review. This Court has reviewed the information, and balanced "the public interest in protecting the flow of information against [Defendant's] right to prepare his defense." *See Roviaro*, 353 U.S. at 62. The Government has a substantial interest in non-disclosure, as disclosure may put CS "in significant danger of retribution, including severe physical injury and even death." ECF 183 at 9. Defendant has not made a sufficient showing that CS is a percipient witness, *see United States v. Cervantes*, 542 F.2d 773, 775 (9th Cir. 1976), or that CS's identity is necessary for the defense's case. Accordingly, and for the reasons stated on the record at the May 10, 2022 hearing, this Court finds the identity of the CS may be properly withheld by the Government.

### F. Continuance of Trial

The Parties have requested that this Court continue the trial date, and Defendant, as stated on the record and in his filed waiver, ECF 190, has waived his speedy trial rights. This Court resets trial to October 18, 2022. Pursuant to 18 U.S.C. § 3161(h)(7)(A) and as stated on the record, the Court finds that the ends of justice outweigh the best interests of the public and the defendant in a speedy trial because the failure to grant the requested continuance is likely to result in a miscarriage of justice, *id*. § 3161(h)(7)(B)(i), and likely would deny Defendant's counsel the reasonable time necessary for effective preparation taking into account the exercise of due diligence, *id*. § 3161(h)(7)(B)(iv). Therefore, and in light of Defendant's speedy trial

PAGE 16 – OPINION AND ORDER

waiver and as stated on the record during the May 10, 2022 hearing, the Court finds time properly excludable until October 18, 2022.

## CONCLUSION

Defendant's Motion to Dismiss for speedy trial violations, ECF 194, is DENIED. Defendant's Motion to Compel the identity of the Confidential Source, ECF 177, is DENIED. Defendant's Motion to Dismiss for discovery violations, ECF 195, is DENIED, except that this Court grants Defendant leave to renew the *Franks* motion specifically regarding the statements referenced in the Motion to Dismiss, *id*. at 7–11. Finally, this Court resets trial to October 18, 2022, at the request of parties, and finds time excludable.

**IT IS SO ORDERED**.

DATED this 12th day of May, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge