IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:18-cr-00475-IM |
| v. | **OPINION AND ORDER** |
| **DONTAE LAMONT HUNT**, | |
| Defendant. | |

Natalie K. Wright, United States Attorney, Peter D. Sax, Gary Y. Sussman, and Suzanne A. Miles, Assistant United States Attorneys, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for the United States.

Amanda A. Thibeault, Alvarez Thibeault, LLC, 330 NE Lincoln Street, Suite 200, Hillsboro, OR 97124. John Robb, Kevin Sali LLC, 1500 SW 1st Avenue, Suite 1020, Portland, OR 97201. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Defendant Dontae Lamont Hunt is charged in a superseding indictment with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), 841(b)(1)(C), and 846, conspiracy to possess with intent to distribute and to distribute controlled substances (Count One); 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi), possession with intent to distribute Fentanyl analogue (Count Two); 18 U.S.C. §§ 922(g)(1) and 924(e)(1), unlawful possession of firearms as an armed career criminal (Counts Three and Four); 18 U.S.C. § 924(c)(1)(A), possession of a firearm in furtherance of a drug

trafficking crime (Count Five); and 18 U.S.C. § 1956, laundering of monetary instruments (Counts Six and Seven). ECF 45; ECF 47; *see also* ECF 73. The indictment also includes several forfeiture allegations. ECF 45.

Before this Court is Defendant's renewed Motion to Suppress Evidence and Request for *Franks* Hearing. ECF 221. Defendant moves to suppress evidence resulting from the September 27, 2018 searches of two properties and a vehicle pursuant to a search warrant ("the premises warrant") and requests a *Franks* hearing related to the Government's omission of information pertaining to a cooperating defendant ("CD") from the premises warrant affidavit. *Id.* at 1–2. This Court granted Defendant leave to file this renewed motion because the Government inadvertently failed to provide all *Brady* material about CD prior to the first motion to suppress hearing in this case held on October 6, 2020 before the Honorable Michael W. Mosman. ECF 215 at 2.

This Court held a hearing on Defendant's renewed motion to suppress on September 9, 2022. ECF 248. Based on this Court's review of the pleadings, record, and arguments of counsel, this Court finds that Defendant is not entitled to a *Franks* hearing and further finds there was probable cause to support the premises warrant searches of Defendant's residences and vehicle for the crimes alleged in the search warrant. Accordingly, Defendant's renewed Motion to Suppress Evidence and Request for *Franks* Hearing is DENIED.

## BACKGROUND

During the course of a federal drug investigation, members of the Portland Police Bureau, Federal Bureau of Investigation, and Internal Revenue Service investigated the June 16, 2018 death of an individual who had consumed counterfeit oxycodone pills. ECF 182 at 7. After the drug overdose death, investigators identified the individual's source of supply as CD and executed a controlled buy. ECF 90 at 7. Officers arrested CD, who admitted to selling the

PAGE 2 – OPINION AND ORDER

counterfeit pills and identified Defendant as CD's source of supply. *Id.* Shortly thereafter, agents applied for the premises warrant to search a Chevrolet Silverado and three properties associated with Defendant—a residence on Dekum street ("Dekum residence"), a suspected stash house apartment on Canyon Road, and a residence on Watts Street. *Id.* at 8; ECF 182 at 3; ECF 221-2, Ex. 1. The warrant application included the information provided by CD, information provided by another confidential source ("CS"), and other evidence of drug trafficking activities. ECF 221-2, Ex. 1 at 20.

On September 27, 2018, agents executed the search warrant. ECF 90 at 8; ECF 182 at 3. They recovered three firearms, counterfeit oxycodone pills, a scale, drug packaging materials, cash, and eleven cell phones from the Dekum residence. ECF 90 at 8–12; ECF 182 at 3. They also arrested Defendant there. ECF 63 at 16. On October 10, 2018, a grand jury returned an indictment against Defendant charging him with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, conspiracy to possess with intent to distribute and to distribute controlled substances (Count One); 18 U.S.C. §§ 922(g)(1), felon in possession of a firearm (Count Two); and 18 U.S.C. § 1956, laundering of monetary instruments (Counts Three and Four). ECF 1. A superseding indictment was filed on March 4, 2020, adding violations of 21 U.S.C. § 841(b)(1)(B)(vi), possession with intent to distribute Fentanyl analogue; 18 U.S.C. §§ 922(g)(1) and 924(e)(1), unlawful possession of firearms as an armed career criminal; and 18 U.S.C. § 924(c)(1)(A), possession of a firearm in furtherance of a drug trafficking crime. ECF 46.

## PROCEDURAL HISTORY

**A. Prior Motions to Suppress (ECF 49; ECF 56)**

Defendant previously challenged the premises warrant in his first and second amended motions to suppress. ECF 50 at 1–2; ECF 56 at 1. In these earlier motions, Defendant's primary argument was that the premises warrant was invalid because it relied on the fruits of earlier,

PAGE 3 – OPINION AND ORDER

invalid warrants.[1] *Id.* Defendant also raised a *Franks* challenge regarding the omission of CD's criminal history in earlier geolocation warrants that this Court finds are not at issue in this motion. ECF 50 at 5–6, 10–11; ECF 56 at 9–10, 14–15.

The Government responded that there was ample independent probable cause to support the premises warrant. ECF 63 at 22; *see also* ECF 126 at 4–5. Judge Mosman held a hearing on October 6, 2020, ECF 81, and concluded that the premises warrant was grounded in probable cause independent of the earlier warrants. *See* ECF 126 at 23–24. Judge Mosman denied Defendant's request for a *Franks* hearing and denied the motions to suppress "as to the premises warrant and beyond." ECF 81. He also denied as moot the motions to suppress "as to [the] earlier warrants."[2] *Id*. This case was reassigned from Judge Mosman to this Court on June 29, 2021. ECF 162.

## B. Motion to Dismiss (ECF 195)

On April 8, 2022, Defendant filed a Motion to Dismiss based on the Government's failure to provide discovery material pertaining to CD's credibility prior to the October 6, 2020 suppression hearing. ECF 195 at 7–11. Defendant pointed to the fact that the Government failed to disclose CS's cell phone records and a transcript of CD's post-arrest interview with investigators until after Judge Mosman denied Defendant's *Franks* challenge. *Id.* In its response to Defendant's Motion to Dismiss, the Government conceded that—although it provided this

---

[1] Defendant argued that (1) the premises warrant relied on invalid warrants for geolocation information of a cell phone ("geolocation warrants") and for a vehicle tracking device ("tracking warrants") and (2) after excising the information from these warrants, there was insufficient probable cause for the premises warrant. ECF 50 at 1–2; ECF 56 at 1–2.

[2] Judge Mosman also acknowledged that Defendant may not have realized that CD and CS—who have been referred to by various names—are different people and granted Defendant leave to raise a *Franks* challenge pertaining to that confusion. ECF 126 at 23–24. However, Defendant has not raised a *Franks* challenge to CS in the present motion.

information to Defendant prior to the previously scheduled November 2020 trial date—it should have provided the information prior to the October 6, 2020 *Franks* hearing before Judge Mosman, but inadvertently failed to do so. ECF 208 at 5–6. After a hearing on Defendant's Motion to Dismiss, this Court denied Defendant's motion, but granted Defendant leave to reopen the *Franks* motion regarding the belatedly disclosed information about CD. ECF 215 at 13.

**C.  Current Motion to Suppress (ECF 221)**

Now before this Court is Defendant's renewed Motion to Suppress Evidence and Request for *Franks* Hearing. ECF 221. In his motion, Defendant re-raises his *Franks* challenge related to CD. Defendant again argues that the Government's failure to disclose CD's phone records allegedly demonstrating that CD had multiple sources of drug supply and was involved in prostitution activity as well as drug activity, *id.* at 3, 7 n. 18, and failure to disclose CD's post-arrest interview transcript, which Defendant argues reveals a "pattern of deception," entitles Defendant to a *Franks* hearing. *Id.* at 6. Defendant also raises an additional challenge to CD's credibility: two undisclosed misdemeanor convictions, one for obstruction of a public officer and one for destruction of evidence. In addition, defendant claims the warrant failed to include details about arrests and charges for obstruction of a public officer. *Id.* at 5–6. Defendant contends that this omitted material was essential for a magistrate to assess CD's credibility and, without CD's information, the premises warrant is not grounded in probable cause. *Id.* at 8–12. The Government responds that the missing information would not have affected a magistrate's assessment of CD's credibility, ECF 230 at 9–12, and is not material to the probable cause determination, *id.* at 14–16.

**STANDARDS**

**A.  *Franks* Hearing**

To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing"

PAGE 5 – OPINION AND ORDER

that (1) a "false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) "the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 154–56 (1978); *see also United States v. Meek*, 366 F.3d 705, 717 (9th Cir. 2004) (To obtain a hearing, the false statements must be "material in tipping the balance on the probable cause decision."). False statements extend to "omissions of material facts." *United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992). The defendant "bears the burden of proof," *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002), and "must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008). If the defendant makes this showing by a preponderance of the evidence, the affidavit's false material will be set aside, and the remaining content will be judged to determine whether it is sufficient to establish probable cause. *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017). If the remaining content is not sufficient to establish probable cause, the defendant is entitled to an evidentiary hearing. *Franks*, 438 U.S. at 171–72.

**B. Fourth Amendment**

The Fourth Amendment protects against "unreasonable searches and seizures." *United States v. Jones*, 565 U.S. 400, 404 (2012) (internal citation and quotations omitted). To support the issuance of a search warrant, an affiant must present evidence that gives the magistrate judge a "'substantial basis' for concluding probable cause existed" based on the totality of the circumstances. *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (alterations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)).

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Probable cause is "a fluid

PAGE 6 – OPINION AND ORDER

concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. This test requires a magistrate to make a "common sense determination." *United States v. Mendonsa*, 989 F.2d 366, 368 (9th Cir. 1993). Issuing judges may consider "otherwise innocent behavior" which "may be indicative of criminality when viewed in context." *Chavez-Miranda*, 306 F.3d at 978. They may also "rely on the training and experience of affiant police officers." *Id.* (internal citation omitted). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see also United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir. 1986) (noting that "[a] magistrate's determination of probable cause to issue a warrant is treated with great deference").

## DISCUSSION

Defendant argues that he is entitled to a *Franks* hearing because the Government omitted key evidence pertaining to CD's veracity from the premises warrant application which was necessary to assess CD's credibility and therefore determine whether there was probable cause to support the warrant. ECF 221 at 5–8. Specifically, Defendant contends that information from CD's proffer, criminal history, and cell phone records should have been included in the affidavit. *Id.* at 5–7. In response, the Government argues that the missing information is not material and, even if the information provided by CD in support of probable cause were excised from the premises warrant, there is still probable cause to support the warrant. ECF 230 at 1.

**A. Intentional, Knowing, or Reckless Omission**

First, Defendant has not met his burden of proof for a hearing under *Franks*. He has not made specific allegations or offered evidence from which this Court could conclude that the omission of information pertaining to CD's credibility was intentional, knowing, or reckless. The

PAGE 7 – OPINION AND ORDER

premises warrant affidavit included that CD was "providing information in exchange for consideration on pending drug charges," that CD "has prior arrests in multiple states on drug-related charges and other crimes," and that CD "has been convicted of a misdemeanor for providing a false identification to law enforcement to avoid arrest." ECF 221-2, Ex. 1 at 14. The affiant officer also disclosed the core, relevant information derived from CD's interview with investigators, which is that CD identified Defendant's phone number as the phone number used by CD's source of supply and ultimately identified Defendant as the source of supply. *Id.*

The officer was not obligated to provide a detailed recitation of CD's interview with investigators or each of CD's misdemeanor arrests and convictions, as long as the warrant affidavit disclosed enough information from which a reasonable magistrate could assess CD's credibility. Because this information would not have affected a reasonable magistrate's evaluation of the affidavit, this Court does not find that the officer acted intentionally, knowingly, or recklessly without evidence of the same offered by Defendant.

## B. Necessary for a Finding of Probable Cause

Even if Defendant had made a substantial preliminary showing that the Government's omission of information pertaining to CD's credibility was deliberate or reckless, the omitted information would not have tipped the balance on the probable cause decision.

### 1. CD's credibility

Defendant argues that the information provided about CD in the premises warrant application "fell far short of adequately appraising the magistrate of CD's consistent recorded history of dishonesty." ECF 221 at 5. This Court disagrees.

In reviewing a search warrant application based on an informant's tip, courts apply a flexible "totality-of-the-circumstances" test to determine whether probable cause exists. *Gates*, 462 U.S. at 230–32. An informant's basis of knowledge and reliability are "relevant

PAGE 8 – OPINION AND ORDER

considerations in the totality-of-the-circumstances analysis." *Id.* at 233. When considering an informant's basis of knowledge, courts look for "how the informant came by his or her knowledge." *United States v. Bishop*, 264 F.3d 919, 925 (9th Cir. 2001) (internal citation and quotations omitted). When considering an informant's reliability, courts may look to whether there was "independent police corroboration of the information provided." *Id.* (internal citation omitted). An informant's reliability can also be demonstrated by corroboration by another confidential informant. *United States v. Landis*, 726 F.2d 540, 543 (9th Cir. 1984) ("Interlocking tips from different confidential informants enhance the credibility of each."). Courts may also consider an informant's criminal history—"[a]ny crime involving dishonesty necessarily has an adverse effect on an informant's credibility." *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000).

      CD's additional misdemeanor convictions, charges, and arrests for obstruction of a public officer and destruction of evidence would not have affected a reasonable magistrate's assessment of CD's credibility. The offenses are not necessarily crimes of dishonesty—lying is not an element of either offense.[3] *See, e.g.*, *United States v. Foster*, 227 F.3d 1096, 1100 (9th Cir. 2000) (For purposes of impeachment under Fed. R. Evid. 609(a), a crime of dishonesty is limited to those offenses that "involve some element of misrepresentation or other indicium of a propensity to lie . . . ."). Moreover, the affidavit disclosed CD's misdemeanor conviction for providing a false identification to law enforcement and that "CD has prior arrests in multiple states on drug-

---

[3] *See* Cal. Pen. Code § 148(a)(1) (prohibiting "willfully resist[ing], delay[ing], or obstruct[ing] any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ."); Cal. Pen. Code § 135 (prohibiting "knowing that any book, paper, record, instrument in writing, digital image, video recording owned by another, or other matter or thing, is about to be produced in evidence upon a trial, inquiry, or investigation, authorized by law, willfully destroy[ing], eras[ing], or conceal[ing] the same, with the intent to prevent it or its content from being produced . . . .").

PAGE 9 – OPINION AND ORDER

related charges and other crimes." ECF 221-2, Ex. 1 at 14. The affidavit further disclosed that CD was providing information in exchange for consideration on pending drug charges. *Id*. This Court finds that those disclosures are significantly more inculpatory than the omitted information and sufficiently apprised the magistrate of the issues with CD's credibility.

In addition, the omitted portions of CD's interview with investigators did not affect the magistrate's opportunity to assess CD's credibility to any meaningful degree. Defendant argues that the interview demonstrates CD's propensity for "lies and manipulation." ECF 221 at 7. However, while the transcript demonstrates CD was initially reluctant to provide information about Defendant, it also demonstrates CD's intense fear of Defendant. For example, CD stated that he/she was "afraid for [his/her] life," ECF 222 at 46, and asked if there was a witness protection program, *id.* at 51. A reasonable magistrate would more likely have concluded that CD's initial equivocation was the result of CD's fear of Defendant—not a propensity to tell lies.

Further, CD's statements are corroborated by CS's statements and other independent bases for probable cause contained in the premises warrant affidavit. Finally, the fact that CD's phone records demonstrate that CD got drugs from multiple sources and communicated with potential prostitution clients does not shed doubt on the fact that CD may also have gotten drugs from Defendant. Indeed, CD was able to provide a phone number associated with Defendant, which was also provided independently by CS. Accordingly, this Court finds that the premises warrant affidavit provided the magistrate with a sufficient opportunity to assess CD's credibility and weigh the information provided by CD.

    2. **Probable Cause for Drug Trafficking Without CD's Statements**

Even if the omitted information undermined CD's credibility such that CD's statements should have been excised from the probable cause analysis, there would still have been

substantial evidence from which a magistrate judge could have concluded there was probable cause for the premises warrant.

Defendant contends that, after accounting for the removal of CD's statements, the premises warrant is no longer grounded in probable cause. First, Defendant argues that the initial geolocation warrant was invalid and asks this Court to analyze whether there was probable cause independent of the same. ECF 221 at 9–11. Further Defendant argues that absent the information provided by CD, the affidavit lacks probable because: (1) that the information provided by CS is "insufficient to support probable cause," *id.* at 11, and (2) that the remaining evidence averred in the warrant affidavit is "speculative" and its "inculpatory value" relies on the information provided by CS and CD, *id.* at 12.

With respect to the geolocation warrant information, Judge Mosman already determined that there was independent probable cause for the premises warrant apart from information obtained from the geolocation and tracking warrants. ECF 126. He considered many independent bases for probable cause—only one of which was the information provided by CD.[4] *Id.* This Court finds that Judge Mosman correctly concluded that there were numerous independent bases to support probable cause that did not rely upon the geolocation or tracking information. And, even if this Court were to excise the information about CD from a consideration of those

---

[4] Judge Mosman considered the following evidence: the December 2, 2017 shooting of Defendant in Eugene, Oregon, Defendant's prior felony drug convictions, statements provided by CD, statements provided by CS, Defendant's receipt of unexplained Walmart money transfers, information derived from surveillance conducted using a camera affixed to a pole outside the Dekum residence, information derived from physical surveillance conducted of Defendant, Defendant's counter-surveillance activities, Defendant's use of multiple cell phones, Defendant's use of vehicles registered in third parties' names, and vehicle rentals by Jessica Thompson, the mother of Defendant's child, despite owning a vehicle. *See* ECF 126.

PAGE 11 – OPINION AND ORDER

independent bases, there would still be sufficient information from which a reasonable magistrate could find probable cause.

### a. Information from CS

Defendant argues the affidavit did not provide sufficient information about CS's reliability and basis of knowledge, especially whether CS obtained his/her information "from personal observation rather than casual rumor." ECF 221 at 12 (internal citation and quotations omitted). The Government responds that CS is an "established and proven" Government informant and that the information provided by CS was corroborated. ECF 230 at 11.

With respect to CS's reliability, the affidavit stated that CS has previously provided extensive information to law enforcement regarding the distribution of pressed pills in Portland and that CS supplied information for this case that investigators "kn[e]w to be true . . . even though the CS had no reason to believe investigators knew or were familiar with the information provided . . . ." ECF 221-2, Ex. 1 at 28. Moreover, CS's statements are corroborated by CD's statements and by other independent bases for probable cause. With respect to CS's basis of knowledge, CS provided detailed information, such as the fact that Defendant stores cash at residences belonging to female acquaintants, *id.*, which suggests personal observation. Accordingly, this Court finds that the affidavit contains sufficient information pertaining to CS's reliability and basis of knowledge.

### b. Remaining Evidence

Defendant also argues that the remaining evidence is "well within the 'innocent fact' realm," especially if the information provided by CD and CS is removed. ECF 221 at 8. Defendant argues that unexplained Walmart cash transfers and other access to cash, vehicle rentals, counter-surveillance activities, suspicious trips to Spokane and Tacoma, vehicles purchased through third parties, and frequent use of a rental apartment for brief stops, all have

PAGE 12 – OPINION AND ORDER

innocent explanations and thus fail to establish probable cause that Defendant was engaged in drug trafficking.[5] A magistrate was entitled to rely on the training and experience of the affiant officer in finding that these behaviors were indicative of drug trafficking. Moreover, even if each piece of evidence alone constitutes an innocent detail, a magistrate could have found that those innocent details indicated criminality when viewed together. Accordingly, this Court finds that there was substantial evidence from which a magistrate could reasonably have concluded there was probable cause that Defendant was engaged in drug trafficking.

### 3. Probable Cause that Evidence of Drug Trafficking Would Be Found at the Dekum Residence

Finally, Defendant contends that there was no specific evidence that drug activity occurred at the Dekum residence. ECF 221 at 16. The Government responds that "more than a reasonable nexus existed" between the drug trafficking activities and the Dekum residence. ECF 230 at 17.

"Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location." *United States v. Agulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) (internal citation omitted). "A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Id.* (internal citation omitted). There need only be a "reasonable nexus between the activities supporting probable cause and the locations to be searched." *United States v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004) (quoting *United States v. Ocampo*, 937 F.2d

---

[5] There are additional pieces of evidence that support probable cause that Defendant is not challenging in the present motion, including the December 2, 2017 shooting of Defendant in Eugene and Defendant's prior felony convictions. *See* ECF 126.

PAGE 13 – OPINION AND ORDER

485, 490 (9th Cir. 1991)). "In the case of drug dealers, evidence is likely to be found where the dealers live." *Agulo-Lopez*, 791 F.2d at 1399 (internal citation omitted).

The affidavit for the premises warrant set forth probable cause that Defendant was engaged in drug trafficking. A magistrate was entitled to draw the reasonable inference that evidence of drug trafficking would be found where Defendant, an alleged drug dealer, lives. Accordingly, this Court finds that a magistrate could have reasonably concluded there was probable cause that evidence of drug trafficking would be found at the Dekum residence.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Evidence and Request for *Franks* Hearing, ECF 221, is DENIED.

**IT IS SO ORDERED**.

DATED this 4th day of October, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge