IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:18-cr-00475-IM |
| v. | **OPINION AND ORDER** |
| **DONTAE LAMONT HUNT**, | |
| Defendant. | |

Peter D. Sax, Gary Y. Sussman, and Suzanne A. Miles, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for the United States.

Amanda A. Thibeault, Alvarez Thibeault, LLC, 330 NE Lincoln Street, Suite 200, Hillsboro, OR 97124. John Robb, Kevin Sali LLC, 1500 SW 1st Avenue, Suite 1020, Portland, OR 97201. Attorneys for Defendant.

**IMMERGUT, District Judge.**

## INTRODUCTION

On October 26, 2022, a jury found Defendant Dontae Lamont Hunt guilty of conspiracy to possess with the intent to distribute and to distribute fentanyl analogue (Count One) and possession with the intent to distribute fentanyl analogue (Count Two). The jury further found that both counts involved ten or more grams of a mixture or substance containing a detectable amount of any analogue of fentanyl. Defendant now moves this Court for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Civil Procedure as to the jury's finding that the

PAGE 1 – OPINION AND ORDER

conspiracy involved in Count One and the offense involved in Count Two involved ten or more grams of a mixture or substance containing fentanyl analogue. ECF 338. For the reasons set forth below, Defendant's Motion for Judgment of Acquittal is DENIED.

## STANDARDS

Federal Rule of Criminal Procedure 29 provides that a court, on the motion of a defendant, must enter a judgment of acquittal as to any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a), (c)(2). Evidence is sufficient to sustain a conviction if "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Viewing the evidence in the light most favorable to the prosecution requires a court to "'presume [. . .] that the trier of fact resolved any . . . conflict[ing inferences] in favor of the prosecution.'" *United States v. Rosales*, 516 F.3d 749, 752 (9th Cir. 2008) (quoting *United States v. Johnson*, 229 F.3d 891, 894 (9th Cir. 2000)). Evidence is insufficient to sustain a conviction "where mere speculation, rather than reasonable inference, supports the government's case . . . ." *U.S. v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (citation omitted). "In ruling on a Rule 29(c) motion, a district court must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977) (internal citation and quotation marks omitted).

## BACKGROUND

Defendant was charged in a second superseding indictment with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), 841(b)(1)(C), and 846, conspiracy to possess with intent to distribute and to distribute controlled substances (Count One); 21 U.S.C. §§ 841(a)(1) and

PAGE 2 – OPINION AND ORDER

841(b)(1)(B)(vi), possession with intent to distribute fentanyl analogue (Count Two); 18 U.S.C. §§ 922(g)(1) and 924(e)(1), unlawful possession of firearms as an armed career criminal (Counts Three and Four); 18 U.S.C. § 924(c)(1)(A), possession of a firearm in furtherance of a drug trafficking crime (Count Five); and 18 U.S.C. § 1956, laundering of monetary instruments (Counts Six and Seven). ECF 288; *see also* ECF 73. At the close of all the evidence at trial, Defendant moved for a judgment of acquittal on all counts. ECF 338 at 2. This Court denied that motion. *Id.*

On October 26, 2022, the jury found Defendant guilty of conspiracy to possess with the intent to distribute and to distribute fentanyl analogue (Count One), possession with the intent to distribute fentanyl analogue (Count Two), unlawful possession of firearms as an armed career criminal (Counts Three and Four), and laundering of monetary instruments (Counts Six and Seven). ECF 334. The jury further found that the conspiracy involved ten or more grams of a mixture or substance containing a detectable amount of any analogue of fentanyl (Count One) and that Defendant possessed with intent to distribute ten or more grams of a mixture or substance containing a detectable amount of any analogue of fentanyl (Count Two). *Id.* Defendant now moves for a judgment of acquittal with respect to these special findings.

At trial, the Government established the existence of two conspiracies involving Defendant. The Government's evidence demonstrated that co-conspirator P.R. Suebsang distributed between 200 and 500 pills provided by Defendant at one dollar per milligram and that Defendant told her the pills were counterfeit and made with fentanyl. ECF 339 at 4. The Government also established that co-conspirator Rylie Jones received approximately 2,000 pills from Defendant that she distributed to her father at thirty dollars per pill—or one dollar per

milligram. *Id.* Jones also observed that Defendant obtained pills from sources in Seattle, Washington and Oakland, California. *Id.*

Defendant also sold between twenty and forty blue pills bearing "M8" imprints to Alexandra Hill approximately six to eight times. *Id.* Hill believed that the pills were counterfeit oxycodone, and she only got counterfeit oxycodone pills from Defendant. *Id.* The Government also produced evidence of text messages sent to Defendant from what appear to be drug customers inquiring about or ordering drugs. *Id.* at 5. Some of these messages indicate that Defendant provided large quantities of pills. *Id.*; *see also* ECF 336, Ex. 140 ("[T]ryna snag a hundo"); *id.* at Ex. 144 ("Need a hundo, lmk"); *id.* at Ex. 147 ("Tryna get 40"); *id.* at Ex. 150 ("I don't think that was a hundred, 89"). Moreover, the Government adduced evidence of Defendant's unexplained wealth—which far exceeded his de minimis reported income on his IRS Form W-2—and of his significant spending on expensive items such as jewelry and cars. ECF 338 at 5; *see, e.g.*, ECF 336, Ex. 165; *id.* at Ex. 167.

At trial, the Government established that when agents arrived to conduct a search of Defendant's Dekum Street residence, Defendant refused to surrender and remained alone upstairs for approximately twelve minutes before finally surrendering. Agents then recovered seven blue pills with "E8" markings on the floor of the upstairs bathroom, a crushed blue pill on the rim of the toilet seat, and a sandwich bag containing blue powdery residue in the pocket of a bathrobe. ECF 338 at 3. Commander Art Nakamura testified that, based on his experience, the scene was consistent with someone trying to dispose of drugs. *Id.* Notwithstanding, agents seized forty-nine counterfeit oxycodone pills from the Dekum Street residence: seven from the upstairs bathroom and forty-two from inside an Aquaphor jar. *Id.* at 2. Agents also seized forty-three from Hill: five from an undercover buy and thirty-eight from her car. *Id.* at 2–3. In total,

investigators seized ninety-two pills attributable to Defendant. *Id.* at 3. Each of the seized pills weighed slightly more than a tenth of a gram, or 9.2 grams in total. *Id.* Samples of the pills were tested by the Oregon State Police Forensic Laboratory, which determined that they contained fentanyl analogue. *Id.*

## DISCUSSION

To support the jury's special findings for Counts One and Two, the Government had to establish that Defendant conspired to possess with intent to distribute and to distribute (Count One), and possessed with intent to distribute (Count Two), ten grams or more of a mixture or substance containing fentanyl analogue. The Government produced evidence that ninety-two pills, or 9.2 grams, attributable to the Defendant were seized. The government also established that samples of these pills were tested and tested positive for fentanyl analogue. Therefore, the jury needed only to further infer that Defendant conspired to possess with the intent to distribute and to distribute, and possessed with intent to distribute, an additional eighth of a gram of a mixture or substance containing fentanyl analogue. This Court finds that the Government presented sufficient evidence to support this inference.

First, the Government presented evidence from which a rational jury could infer that Defendant destroyed some of his pill stash by flushing pills down the toilet. Second, the Government presented evidence that Defendant provided co-conspirator Suebsang with between 200 and 500 pills, which Defendant told her were counterfeit and contained fentanyl and which Suebsang sold at one dollar per milligram. Defendant also provided co-conspirator Jones with approximately 2,000 pills. Even though Jones did not testify as to what she understood these pills to contain, Jones sold the pills at the same price as did Suebsang, and Defendant bought these pills from multiple non-medical sources. Third, the Government's evidence established that Defendant provided Hill with between 120 and 320 pills that bore markings consistent with

PAGE 5 – OPINION AND ORDER

counterfeit oxycodone pills and that Hill understood the pills to be counterfeit oxycodone. This evidence reasonably suggests that, like the pills found at the Dekum residence, the 2,320 to 2,820 pills Defendant provided to Suebsang, Jones, and Hill also contained fentanyl analogue. Moreover, Defendant's unexplained six-figure income created the reasonable inference that his wealth came from an illegitimate source. Given the other evidence adduced at trial, including text messages from people ordering significant quantities of drugs from Defendant, a rational jury could have inferred that the illegitimate source was drug trafficking. *See United States v. Jabara*, 618 F.2d 1319, 1329 (9th Cir. 1980) (finding unexplained wealth relevant in drug conspiracy cases).

Defendant argues that because the Government never seized or tested any of the pills involved in the Suebsang and Jones conspiracies, the substance of those pills is "completely unknown." ECF 338 at 3. This argument is unavailing. Defendant has not pointed this Court to any authority that suggests that the Government must seize or test every pill necessary to hit the ten-gram threshold. Moreover, "[e]vidence at trial must be considered as a whole." *Rosales*, 516 F.3d at 752. While the Government may not have adduced direct evidence of what the pills contained, it presented sufficient circumstantial evidence to support the reasonable inference that the pills involved in the Suebsang and Jones conspiracies contained fentanyl analogue. *See United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978) ("circumstantial evidence is intrinsically no different from direct evidence").

Similarly, Defendant also argues that pills being sold on the street may contain oxycodone, fentanyl, fentanyl analogue, a mixture of all three, or no controlled substances at all and that there is no way to predict the substance of a particular pill without testing it. ECF 338 at 3. But a rational trier of fact considering all of the evidence could reasonably infer that additional

pills attributable to Defendant contained the same substance as the tested samples. Accordingly, based on all the evidence presented at trial and viewing the evidence in the light most favorable to the Government, a rational jury could find that Defendant conspired to possess with the intent to distribute and to distribute, and possessed with intent to distribute, ten grams or more of a substance containing fentanyl analogue.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment of Acquittal, ECF 338, is DENIED.

**IT IS SO ORDERED**.

DATED this 16th day of December, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge